Tennessee Coal, etc., Co. v. McDowell.

TENNESSEE COAL, ETC., CO. v. McDOWELL.

(*Nashville.* July 19, 1898.)

1. ESTOPPEL.  *In pais defeats title to land.*

The owner of land who has acquired title by seven years' adverse possession, under a conflicting junior grant, estops himself to assert that title, *pro tanto*, by knowingly permitting the senior grantee, or those claiming under him, to cut off and sell a portion of the land thus held to an innocent party, who has in good faith taken possession and paid the price, or otherwise incurred obligations about the land.  (*Post, pp. 566–571.*)

Cases cited and approved: Patton *v.* McClure, M. & Y., 339; Morris *v.* Moore, 11 Hum., 434; 6 Johns. Ch., 167.

2. STATUTE OF LIMITATIONS.  *Suspension of.*

The constitutional and statutory provisions enacted in 1865 and 1870, declaring a suspension of all statutes of limitations from May 6, 1861, to January 1, 1867, did not, and could not if so intended, divest or in any manner affect a title to land which had been acquired by seven years' adverse possession, commencing in 1856 and maturing in 1863.  (*Post, pp. 571, 572.*)

Constitution construed: Schedule, § 4.

Act construed: Acts 1865, Ch. 10.   See Code, § 2784*a* (T. & S.).

Cases cited and approved: State *v.* Bank, 9 Yer., 119; Girdner *v.* Stephens, 1 Heis., 280.

---

FROM GRUNDY.

---

Appeal from Chancery Court of Grundy County. THOS. M. McCONNELL, Ch.

A. T. BELL, W. D. SPEARS, and STEGER, WASHINGTON & JACKSON for Railroad.

J. B. FERGUSON, T. C. LIND, A. B. WOODARD, GRANBERY & MARKS for McDowell.

McALISTER, J. This is an ejectment bill filed in the Chancery Court of Grundy County to establish complainants' title to a tract of land comprising about one hundred and sixty acres, and to remove a cloud from said title. The Chancellor dismissed the bill. On appeal the Court of Chancery Appeals reversed the decree of the Chancellor and pronounced a decree in favor of complainant for the lands in controversy. Defendants, McDowell and Ferguson, appealed and have assigned errors.

Complainant, the Tennessee Coal, Iron & Railroad Co., derives its title from grant No. 5087, issued by the State of Tennessee to S. B. Barrell, April 25, 1837, for 5,000 acres. This grant was based upon an entry duly made by S. B. Barrell November 24, 1836. Defendants, McDowell and Ferguson, derive their title from a grant issued by the State of Tennessee to Stephen Kilgore, Jr., March 1, 1856, for one hundred and sixty acres. It is conceded by counsel that this one hundred and sixty acre tract granted to Kilgore was comprised within the boundaries of the 5,000 acre grant issued to S. B. Barrell.

The claim of defendants is that, notwithstanding the senior entry and grant of this land to Barrell, that they and their predecessors in title had been in possession of the one hundred and sixty acre

tract by actual inclosures for more than seven years prior to the institution of this suit, and that therefore their title is superior under the first section of the Act of 1819.

The Court of Chancery Appeals find that defendants are estopped to assert title to the land, on account of certain acts *in pais* on the part of Stephen Kilgore, Jr., their predecessor in title and the original grantee of this one hundred and sixty acre tract.

The first assignment of error on behalf of defendants is that the facts found by the Court of Chancery Appeals would not, as a matter of law, have estopped Kilgore to claim title to the land in controversy, and hence his privies and successors in title are not esstopped.

The specific objection made to the decree of the Court of Chancery Appeals is that it does not find that complainant company was misled, or that its title was acquired upon the faith of any conduct or representations made by the said Stephen Kilgore, Jr. On this point the Court of Chancery Appeals, through Judge Wilson, finds, viz.: "It is moreover clear when the representatives of the Barrell interests came to survey out the Barrell lands and convey them to the complainant, . . . they did survey and include in its transfer to the complainant company all of the Kilgore grant aforesaid except the fifty odd acres embraced in what is known as the Kilgore improvements. We think, also, the weight of

the evidence shows that Kilgore recognized the right of the representatives of Barrell to convey all of said grant, outside of his improvements, to the complainant. We think, also, that after the conveyance was made to complainant, Kilgore stood by and recognized its rights. He (Kilgore) permitted it to take a transfer from the representatives of the Barrell interests. He permitted it to cut off timber, and all the valuable timber, up to his improvements. He permitted it to sell lots and parcels of land up to and adjoining his improvements, and it appears that he gave in his lands for taxes as embracing only his improvements. We think, under the authorities, as well as sound reason, that when he, without asserting his title, permitted the representatives of the Barrells to sell this land to complainant, permitted it to go into possession, as far as it could take possession of such land, and sell it off, without taking any steps to assert his rights, he thereby estopped himself from asserting any title."

"It may be very true," says that Court, "that assuming his (Kilgore's) title to be perfect, he would not be estopped as against Barrell to assert his title because of a parol agreement to surrender all of his grant except that embraced in his improvements. But we apprehend that a different question is presented if the facts show that he stood by and permitted the representatives of Barrell to sell and convey the land, outside of his improvements, to the complainant, without asserting his claim and title to the same."

"It is also true," still quoting from Judge Wilson's opinion, "as argued by counsel, that Kilgore said to quite a number of people that all of grant 11,602 belonged to him, and was his land, but we do not understand that the mere assertion of ownership of land will preclude the operation of the doctrine of estoppel, or that it will establish title to land. Proper legal steps must be taken."

The Court concludes its opinion as follows: "We find as a fact that in 1867, Kilgore, knowing that the representatives of Barrell had surveyed out his (Kilgore's) improvements on grant 11,602, and for the purpose of selling and transferring the remainder to the complainant, Tennessee Coal, Iron & Railroad Co., estopped himself by his acquiescence, and by subsequent permission or acquiescence in the sale of lots up to his improvements, and the cutting and removal of timber, from asserting title to the land in dispute."

We have thus quoted at length from the opinion, for the reason it is earnestly insisted that upon the facts found no estoppel can be predicated. It is insisted by counsel that the Court of Chancery Appeals does not find that the recognition by Kilgore of the right of the representatives of Barrell to convey all of his grant, outside of his improvements, was at a time anterior to the execution of the deed by the Barrells to the complainant company, or that such recognition in any way induced the acceptance of that deed or the consummation of that trade.

We are constrained to disagree with counsel in his construction of the findings of the Court of Chancery Appeals. That Court distinctly finds, and the finding is repeated more than once, that Kilgore stood by and permitted the representatives of Barrell to sell and convey the land outside of his improvements to complainant company, without asserting his claim and title to the same. And they find as a fact that in 1867, Kilgore, knowing that the representatives of Barrell had surveyed out his improvements in grant No. 11,602 for the purpose of selling and transferring the remainder to the complainant, estopped himself by his acquiescence, and by his subsequent permission or acquiescence in the sale of lots up to his improvements. Here is a finding that the representatives of Barrell, prior to the conveyance to complainant, surveyed out, with the knowledge of Kilgore, his improvements, comprising fifty-three acres, as an interfering claim; that this survey was made for the purpose of selling and transferring the remainder of the one hundred and sixty acre grant to complainant company, and that Kilgore acquiesced in all this, and stood by and permitted it to be done without asserting any claim or title.

It was held in *Patton* v. *McClure*, M. & Y., 339, "that if one knowingly, though he does it passively by looking on, suffer another to purchase and expend money upon land under an erroneous opinion of title, without making his claim known, he shall not afterwards be permitted to exercise his

legal rights against such person. To do so would be an act of fraud and injustice, and his conscience would be bound by this equitable estoppel.''

Again, in *Stowe* v. *Barker*, 6 Johns. Ch., 167, it was held, viz.: Where one having title "acquiesces knowingly and freely in the disposition of his property for a valuable consideration, by a person pretending to title and having color of title, he shall be bound by that disposition of the property, and especially if he encouraged the parties to deal with each other in such sale and purchase. It is deemed an act of fraud for a party cognizant all the time of his own right to suffer another party ignorant of that right to go on under that ignorance and purchase the property or expend money in making improvements upon it.'' This case is cited in *Morris* v. *Moore*, 11 Hum., 434, and the principle therein laid down is approved. These principles, applied to the facts found by the Court of Chancery Appeals, are conclusive of this case, and result in its affirmance.

There is one view of the case presented by the Court of Chancery Appeals from which we are constrained to dissent, and that is in respect of the statute of limitations. The question presented was whether the title of Kilgore had been perfected by seven years adverse possession under his grant. The Court of Chancery Appeals found that Kilgore's grant was issued to him March 1, 1856, and although he went into possession and remained con-

tinuously in possession from that date until 1867, his title was not perfected by the statute of limitations of seven years, for the reason the operation of the statute was suspended from May, 1861, until January, 1867. In this position that Court was in error. If Kilgore went into possession in 1856 and continued in adverse possession, his title was perfected in 1863, by seven years adverse possession. The statute of limitations was not suspended until after the rights of Kilgore had become vested by adverse possession under his grant. By Section 4 of the schedule to the amendment to the Constitution, adopted February 22, 1865, it was provided that no statute of limitations shall be held to operate from and after May 6, 1861, until such time hereafter as the Legislature may prescribe. By the Act of the Legislature passed May 30, 1865, the statute was suspended from May 6, 1861, until January 1, 1867. The new Constitution of 1870, in Section 4 of the schedule, contained a similar provision. But it will be perceived that when these statutes and constitutional provisions were passed the possession of Kilgore had been perfected and his rights vested, which could not be divested by a constitutional provision any more than by legislative enactment. It was so decided in *Union Bank* v. *State*, 9 Yer., 119, and *Girdner* v. *Stephens*, 1 Heis., 280.

This question, however, is immaterial, since the estoppel found by the Court of Chancery Appeals is conclusive of the case against the defendants.